

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

April 28, 1953

Honorable Garland A. Smith
Casualty Insurance Commissioner
Board of Insurance Commissioners
Austin, Texas

Opinion No. S-35

Re: The necessity that auto-
mobile dealers who are
attorneys-in-fact for
Lloyds be licensed as in-
surance agents.

Dear Sir:

Your request for an opinion reads:

"During the past few years several Lloyds have op-
erated under a plan permitting credit dealers, principally
in the automobile field, to write insurance in connection
with the credit transactions. The general plan was that
the dealers have been appointed 'attorneys-in-fact' of the
Lloyds and have agreed that the dealers would reimburse
their Lloyds on losses written through their dealerships
up to a specified percentage of the premiums received,
normally about 80%; if the losses were less than the
agreed percentage of the premiums the difference would
be retained by the dealer. The funds over the agreed per-
centage, of course, would be paid to the Lloyds.

"Usually the powers of attorney convey to the deal-
ers full power and authority to act for the underwriters in
all matters except to receive service of citation. In the
operation of the Lloyds, most of the statutory duties and
privileges of the attorney- or attorneys-in-fact are re-
served and exercised by the managing official or officials
of the Lloyds, named by power of attorney from the under-
writers as provided in Article 18.03. For instance, the
dealer attorneys-in-fact are not signatories to the original
application to transact business mentioned in Article 18.03,
nor to the renewal applications from year to year described
in Article 18.04, and no license of any kind is ever issued
to them. They are not a party to the joint control agreement
required by Article 18.10, nor do they participate in the fil-
ing of the annual statement prescribed in Article 18.12 Cita-
tion served on the Chairman of the Board as alternate agent
for service set out in Article 18.17 is never forwarded to

them; nor does the Board treat with them in the giving of notice required by the Board in Article 18.18.

"The dealer attorneys-in-fact have claimed exemption from the Solicitors and Recording Agents Act, Article 21.14, by virtue of Paragraph (e), Section 20 of the Article, which exempts 'the actual attorney in fact for any Lloyds.' Many, if not the majority, of the dealer attorneys-in-fact are not actively engaged in the soliciting or writing of insurance from the public generally, and, in many cases, less than 25% of their total volume of premiums is derived from persons other than themselves and from property other than that on which they control the placing of insurance through ownership of mortgage, sale, family relationship or employment.

"Your Department had before it the related question concerning deputy attorneys-in-fact, and issued opinion approved June 27, 1939 by Mr. Gerald C. Mann, Attorney General of Texas, written by Mr. Ardell Williams, Assistant Attorney General, to Mr. Marvin Hall, Fire Insurance Commissioner. At that time Article 5062a, Section 12, Paragraph (e), exempted from Article 5062a 'the attorney-in-fact for any Lloyds.' In 1941 present Article 21.14 was enacted, similar in many respects to Article 5062a, and in the latter the corresponding exemption is set out in Section 20, Paragraph (e) to 'the actual attorney in fact for any Lloyds.' (Underlining added).

"There is considerable question in the minds of the Board as to whether the dealer attorneys-in-fact are, in the circumstances, exempt from the provisions and requirements of Article 21.14. Our information is that the dealer attorneys-in-fact are performing substantially the same duties as insurance agents. Employment of the word 'actual' in Section 20 (e) which did not appear in the corresponding exemption in Article 5062a, is persuasive that the Legislature intended to restrict the exemption to the attorney- or attorneys-in-fact whose privileges and obligations are actually exercised in the manner set out in Articles 18.03, 18.04, 18.10, 18.12, 18.17 and 18.18.

"Will you please advise me whether the dealer attorneys-in-fact as above described should be licensed by this Department as insurance agents as prescribed by Article 21.14, or whether they qualify under the exemption of Section 20, Paragraph (e) of Article 21.14

and are thus relieved of the necessity of being licensed
as insurance agents?"

Your specific question is whether such "dealers", principally automobile dealers, are exempt from the license requirement of Article 21.14 of the Insurance Code [Article 5062b, V.C.S.][1] in view of the express exemption in Section 20 [Id.] of "the actual attorney in fact for any Lloyds."

Article 21.14 [Article 5062b] provides in part:

"Sec. 1. Classes of Agents. - Insurance Agents,
as that term is defined in the laws of this State, shall
for the purpose of this article be divided into two classes: Local Recording Agents and Solicitors.

"Sec. 2. Definitions; Certain Orders, Societies
or Associations Not Affected. - By the term 'Local
Recording Agent' is meant a person or firm engaged
in soliciting and writing insurance, being authorized
by an insurance company or insurance carrier, including fidelity and surety companies, to solicit business
and to write, sign, execute, and deliver policies of insurance, and to bind companies on insurance risks,
and who maintain an office and a record of such business and the transactions which are involved, who collect premiums on such business and otherwise perform
the customary duties of a local recording agent representing an insurance carrier in its relation with the public;
or a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company or
insurance carrier, including fidelity and surety companies,
to solicit business, and to forward applications for insurance to the home office of the insurance companies and
insurance carriers, where the insurance company's and
insurance carrier's general plan of operation in this State
provides for the appointment and compensation of agents

---

1 Statutory references in this opinion are to the "Insurance Code"
enacted as Senate Bill 236, Acts 52nd Leg., 1951, unless otherwise indicated. Corresponding references to Vernon's Civil Statutes in effect
prior to the effective date of Senate Bill 236, and corresponding to the
statutory references in your request, are noted where practicable in
brackets following such references. Section 2 of Senate Bill 236 provides:
"Substantial Law Preserved. - Nothing contained in this
Act shall be held or construed to effect any substantive change
in the laws existing prior to the passage of this Act . . . "

for insurance and for the execution of policies of insurance by the home office of the insurance company or insurance carrier, or by a supervisory office of such insurance company or insurance carrier, and who maintain an office and a record of such business and the transactions which are involved, and who collect premiums on such business and otherwise qualify and perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public.

"   . . .

"Where reference is made in this article to 'Company' or 'Carrier' such reference means any insurance company, corporation, inter-insurance exchange, mutual, reciprocal, association, Lloyds[1] or other insurance carrier licensed to transact business in the State of Texas other than as excepted herein.

"   . . .

"Sec. 4. Acting Without License Forbidden. - It shall be unlawful for any person or firm or partnership to act as a local recording agent or solicitor in procuring business for any insurance company, corporation, interinsurance exchange, mutual, reciprocal, association, Lloyds or other insurance carrier, until he shall have in force the license provided for herein.

"Sec. 5. Active Agents or Solicitors Only to Be Licensed. - No license shall be granted to any person, firm or partnership, either as a local recording agent or solicitor, for the purpose of writing any form of insurance, unless it is found by the Board of Insurance Commissioners that such person or firm is, or intends to be, actively engaged in the soliciting or writing of insurance from the public generally; that each person or individual of a firm is a resident of Texas, of good character and good reputation, worthy of a license, and is to be actively engaged in good faith in the business of insurance, and that application is not being made in order to evade the laws against rebating and discrimination either for the applicant or for some other person.

---

Emphasis ours throughout this opinion.

Nothing herein contained shall prohibit his insuring his own property or properties in which he has an interest; but it is the intent of this section to prohibit coercion of insurance and to preserve to each citizen the right to choose his own agent or insurance carrier, and to prohibit the licensing of an individual or firm to engage in the insurance business principally to handle business which he controls only through ownership, mortgage or sale, family relationship or employment, which shall be taken to mean that an applicant who is making an original application for license shall show the Board of Insurance Commissioners that he has a bona fide intention to engage in business in which at least twenty-five (25%) per cent of the total volume of premiums shall be derived from persons other than himself and from property other than that on which the applicant shall control the placing of insurance through ownership, mortgage, sale, family relationship or employment; and which shall be taken to mean, in the case of application for renewal of license, that at least twenty-five (25%) per cent of applicant's total volume of premiums, during the year preceding such application for renewal, shall have been derived from persons other than himself and from property other than that on which the applicant controlled the placing of insurance through ownership, mortgage, sale, family relationship or employment.

" . . .

"Sec. 20. Life, Health and Accident Insurance, Inapplicable to; Other Exceptions. - No provisions of this article shall apply to the Life, Health and Accident Insurance business or the Life, Health and Accident Department of the companies engaged therein, nor shall it apply to any of the following, namely:

" . . .

"(b) Any actual attorney in fact and its actual traveling salaried representative as to business transacted through such attorney in fact or salaried representative of any reciprocal exchange or interinsurance exchange admitted to do business in Texas.

" . . .

"(e) The actual attorney in fact for any Lloyds.

" . .

Under the definition of "Company" or "Carrier" in Section 2, and under the terms of Section 4, a person who shall "act as a Local Recording Agent or Solicitor in procuring business for any . . . Lloyds" is required to have a license under Article 21.14. Since the same statute, in Section 20, expressly exempts from its requirements "the actual attorney in fact for any Lloyds," the statute obviously contemplates a distinction between such Agent or Solicitor and such "attorney in fact." The fact that the Legislature expressly exempts such "attorney in fact" also impliedly recognizes that the attorney in fact may function in some respects as a Local Recording Agent or Solicitor, and, except for the exemption, would be required to obtain a license under Article 21.14. The late Chief Justice Alexander, while sitting on the Waco Court of Civil Appeals, wrote in 1931, "under the law, all agents of an insurance company are required to procure a license from the Insurance Commissioner regardless of the extent of their authority." Great American Casualty Company vs. Eichelberger, 37 S.W.2d 1050 (Tex. Civ. App. 1931, error ref.).

After studying Section 2, it is sufficiently clear as to what are the characteristic functions and authority of a Local Recording Agent or Solicitor. His status, under the statute, is determined not only by the authority granted him by the Company or Carrier, but also by what he actually does. In this regard, Section 4 does not in terms prohibit the appointment of an unlicensed person as an Agent or Solicitor. To "act" as a Local Recording Agent or Solicitor without a license "in procuring business" is prohibited. The policy thus indicated is significant since consistency dictates that only an "attorney in fact" who acts or functions as such is intended to be exempt.

It is to be presumed that the Legislature created the exemption in the light of existing statutes regulating the functions of Lloyds organizations, especially where the functions and duties of attorneys in fact are specifically treated, regulated and recognized.

In McBride v. Clayton, 140 Tex. 71, 166 S.W.2d 125 (1942), the court quoted the following language from 59 C.J., p. 1038, § 616:

"All statutes are presumed to be enacted by the Legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts."

Article 21.14 [5062b] was enacted in 1941. At that time Articles 18.01 through 18.24 [5013 through 5023a] comprised most of

the statutes on the subject of Lloyds Plan insurance, most of which articles were carried forward, as amended, from Chapter 19, of Title 78, Revised Civil Statutes of 1925, headed "Lloyds Plan." These statutes, upon careful study, contain provisions which show the nature of Lloyds Plan insurance and the functions of the attorney in fact in connection therewith as authorized in Texas.

The term "Lloyds" or "Lloyds Plan" as used in the statutes is generally descriptive of an authorized method by which individuals acting collectively may underwrite large numbers of insurance risks and at the same time each may limit his individual liability to the insureds and to the other underwriters to a designated sum. The individual underwriter, like a stockholder in a corporation, may venture only the amount to which he individually subscribes. He may limit his total liability to the persons insured to the proportionate part of any loss which his part of a guaranty fund bears to the total guaranty fund contributed by the several underwriters. Article 18.13. The term "Lloyds" is also sometimes used to designate the place at which the business is to be conducted and sometimes as descriptive of the insurance concern organized and doing business on the Lloyds Plan.

In order to effect insurance on the Lloyds Plan the statutes require the underwriters to execute articles of agreement expressing their purpose to do so and to comply with the requirements of the statutes governing Lloyds' organizations. Article 18.01. Article 18.02 authorizes policies of insurance to be executed:

"... by an attorney or by attorneys in fact or other representative, hereby designated 'attorney' ..."

on behalf of the underwriters under a power of attorney.

A license is required by Articles 18.03 and 18.04 which may be renewed annually upon a showing by the underwriters of compliance with the law. The license is, however, issued to the attorney in fact whose application is required to set forth or include:

"(a) The name of the attorney and the title under which the business is to be conducted ...

"(b) The location of the principal office.

"(c) The kinds of insurance to be effected.

...

"(d) A copy of each form of policy or contract by which such insurance is to be effected.

"(e) A copy of the form of power of attorney by virtue of which the attorney is to act for and bind the several underwriters and a copy of the articles of agreement entered into between the underwriters themselves and the attorney.

"(f) The names and addresses of all underwriters, whose number shall be not less than ten.

"(g) A financial statement showing in detail the assets contributed or accumulated in the hands of the attorneys in fact, committee of underwriters, trustees and/or other officers of such underwriters at Lloyd's, together with the liabilities incurred and outstanding and the income received and disbursements made by the attorney for the underwriters.

"(h) An instrument executed by each and all of the underwriters specially empowering the attorney to accept services of process for each underwriter in any action on any policy or contract of insurance and an instrument from the attorney to such Board delegating the attorney's powers in this respect to such Board."

As we construe these statutes, permission to operate on the Lloyds Plan may only be obtained by and through an attorney in fact who holds the necessary power of attorney from the required group of underwriters, and who meets the other requirements for the operation of a Lloyds. We construe such an attorney in fact to be specifically the attorney in fact who makes the initial filing for a group desiring to operate a Lloyds and who obtains the license as such attorney in fact, and that he is the only "actual attorney in fact" for a Lloyds within the meaning of Article 21.14.

The application and license are primarily for the benefit of the concern. No provision is made for additional licenses as to the same concern in order to enable additional attorneys in fact to act for the same concern at the same place of business since the statute is not intended to authorize a merely personal license to an attorney in fact. In other words, the license provided for is granted through the attorney in fact to the organization. The license continues in operation with the continuing existence of the organization regardless of changes in the personnel of the individual underwriters or the attorney in fact. Unless the attorney in fact be so named and designated in the original license, it is essential that authority to act as an attorney in fact for the organization be found elsewhere in the statutes.

Article 18.14 provides:

". . . the acts of the duly appointed deputy
or substitute attorney of any attorney licensed
under this chapter accepting powers of attorney
from underwriters and in making and issuing poli-
cies and contracts of insurance and in doing any
additional acts incident thereto shall be deemed
authorized by the license issued to the original
attorney."

By expressly authorizing "deputy" and "substitute" attorneys to act
under the authority granted to the "original" attorney, the statute im-
pliedly forbids any but a "deputy" or "substitute" to act as an "attorney
in fact" under the license granted to the "original" attorney. This is
especially true since these statutes are so designed as to place responsi-
bility on a single "attorney" for the general operation of a Lloyds. The
capacity of a "deputy" attorney in fact is not identical to "the attorney in
fact." The designation as "deputy" implies a capacity to act for and un-
der the authority of a superior. 26 C.J.S. 978. In Attorney General
Opinion No. 0-1010, approved June 27, 1939, it was held that such "dep-
uties" performing the duties of Local Recording Agents did not come
within an exemption of "The Attorney-in-Fact for any Lloyds" under the
comparable statute then applicable."

Provision for a "substitute" attorney in fact is the only
other provision for an attorney in fact not named in the license to act
as such under the license. A "substitute" attorney in fact, as we under-
stand Article 18.14 is the attorney in fact who replaces the "original
attorney" and thereupon becomes "the actual attorney in fact" upon va-
cation of that position and capacity by the predecessor. 60 C.J. 980.
Under such circumstances the "substitute" would be exempt from the
requirements of Article 21.14.

In view of the considerations discussed, we are convinced
that a lawfully organized Lloyds has only one attorney in fact through
whom the authority of the concern to operate is derived. No other ar-
rangement fits the scheme of regulation and organization set up by the
Lloyds statutes. Such attorney in fact is "the" attorney in fact as that
designation is used in the Lloyds statutes as well as in Article 21.14.

We therefore conclude that any "dealer" who does not fill
the position of "the attorney in fact" for a Lloyds as that position is
contemplated by the statutes is not exempt from the license requirement
of Article 21.14 [5062b].

---

2
Acts 42nd Leg., 1931, ch. 96, p. 150 [5062a]

## SUMMARY

An automobile or finance "dealer" may not act for a Lloyds insurance concern as a "Local Recording Agent or Solicitor" as defined in Article 21.14 of the Insurance Code, without obtaining a Local Recording Agent's or Solicitor's license, unless such "dealer" is the "attorney in fact" named in the Lloyds permit or a "substitute" succeeding to the position of such "attorney in fact" upon his vacation of that position.

APPROVED:

Rudy G. Rice
State Affairs Division

Willis E. Gresham
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

VFT:cm

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By V. F. Taylor
V. F. Taylor
Assistant

NOTE:

Our attention has been called to the past administrative practice by the Board of Insurance Commissioners in permitting the operation of dealers and deputy-attorneys without a license; we have been favored with briefs by able counsel that would favor continuance of that practice and pointing out the hardships which will necessarily follow our ruling. It appears that some hardships will follow, and we therefore recommend that a reasonable time be given by the Board for the dealers and others affected to make application and necessary adjustments. This recommendation, however, should not be construed to alter the holding of our opinion.